## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLEVELAND ORLANDO JOHNSON, ) | |
| ) | Civil Action No. 2:12-1417 |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | |
| MICHAEL W. HARLOW, ) | Magistrate Judge Cynthia Reed Eddy |
| SUPERINTENDENT, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER[1]

Petitioner, Cleveland Orlando Johnson, a state prisoner incarcerated at the State

Correctional Institution at Albion, Pennsylvania has petitioned for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 in connection with his conviction for Murder in the Third Degree.

For the reasons set forth below, the Petition will be denied. An appropriate order follows.

### A. Relevant Factual and Procedural History

The relevant facts are summarized in the Opinion of Superior Court on direct review.

On January 14, 2005, Petitioner had an argument with the victim, David Harris, that ultimately led to the victim's death. Both men were residing in a homeless "camp" in Pittsburgh. The victim, after consuming a large amount of alcohol, accused Petitioner of stealing his vodka. A verbal altercation ensued between the two parties, and Petitioner ultimately stabbed the victim in the abdomen with a sword that was encased in his cane. The victim died that day from the injuries sustained to his diaphragm, liver, and heart. Petitioner confessed to the killing, and claimed that he was acting in self-defense because the victim wielded a brick during the fight.

On February 23, 2006, Appellant was convicted bv a jury of third degree murder, and sentenced to fifteen to thirty years imprisonment on May 18th of the same year. On April 25, 2008, Appellant filed a counseled Post-Conviction Relief Act petition requesting reinstatement of his appellate rights, which was

---

1 The parties consented to jurisdiction by a United States Magistrate Judge. *See* ECF Nos. 8and
9. *See also* 28 U.S.C. § 636(c)(1).

granted by the court the following October. Appellant filed a counseled amended post sentence motion on February 19, 2009, arguing that: (1) the evidence was insufficient to support a conviction of third degree murder; (2) the conviction was against the weight of the evidence; and (3) the sentence imposed was excessive. The trial court denied the motion on February 24, 2009.

Sup. Ct. Op. at 1-2 (ECF No. 11-2, pp 37-38). On March 24, 2010, the Superior Court affirmed his judgment of sentence.

On March 3, 2011, Petitioner filed a *pro se* petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. §9541, *et seq.* and Steven Townsend, Esquire was appointed to represent Petitioner in connection with this petition. On June 3, 2011, counsel field a "no merit" letter requesting leave to withdraw. On June 29, 2011, the court granted counsel's motion to withdraw, and by Order dated August 3, 2011, dismissed Petitioner's petition. Petitioner, *pro se*, filed an appeal with the Superior Court and the Trial Court filed its Opinion denying the Petition on December 13, 2011. Although the appeal was timely filed, on April 17, 2012, the Superior Court quashed and dismissed the appeal because the Brief for Appellant was "wholly inadequate" under the Rules of Appellate Procedure.

Petitioner filed his Petition for a Writ of Habeas Corpus with this Court on January 25, 2012, wherein he set forth the following claims.

1. The PCRA court erred in accepting the No Merit Letter and dismissing the PCRA Petition.

2. The trial court abused its discretion in denying the post-verdict motions because the Commonwealth did not meet its burden proof.

3. The trial court abused its discretion because the sentence was manifestly excessive.

Petitioner presented these claims to the Pennsylvania State Courts in his direct and post-conviction proceedings.

## B. Standard of Federal habeas Corpus Review

In describing the role of federal habeas corpus proceedings, the Supreme Court of the

United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

[I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996,

Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal

habeas court's role in reviewing state prisoner applications in order to prevent federal habeas

'retrials' and to ensure that state-court convictions are given effect to the extent possible under

law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of

review for federal court review of state court criminal determinations and provides, in relevant

part, as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"Clearly established Federal law" should be determined as of the date of the relevant

state-court decision and is limited to the record that was before the state court that adjudicated

3

the claim on the merits. Greene v. Fisher, ___ U.S. ___, 132 S.Ct. 38 (2011); Cullen v. Pinholster, 563 U.S. ——, 131 S.Ct. 1388, 1398 (2011). A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Jamison v. Klem, 544 F.3d 266, 274 (3d Cir. 2008). The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court, Williams, 529 U.S. at 405, although district and appellate federal court decisions evaluating Supreme Court precedent may amplify such precedent, Hardcastle v. Horn, 368 F.3d 246, 256 n. 3 (3d Cir. 2004) (citing Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999)). The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8, (2002); Jamison, 544 F.3d at 274-75. Few state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision 'involves an unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Williams, 529 U.S. at 407. A showing of clear error is not sufficient. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly. Thomas

4

v. Varner, 428 F.3d 491, 497 (3d Cir. 2005); Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. ——, ——, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington, 131 S. Ct. at 786–87.

The Supreme Court repeatedly has reiterated the deference that the federal courts must accord to state court decisions. *See* Felkner v. Jackson, —— U.S. ——, 131 S.Ct. 1305, 1307 (2011) ("AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."); Harrington v. Richter, __ U.S.__, 131 S.Ct. 770, 786 (2011) ("We must use habeas corpus as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."); Renico v. Lett, __ U.S. __, 130 S.Ct. 1855, 1862 (2010) ("whether the trial judge was right or wrong is not the pertinent question under AEDPA"); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); Lockyer v. Andrade, 538 U.S. 63, 75 (2003) ("it is not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was erroneous.").

5

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id.* (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

## C. Petitioner's Claims

### 1. No-Merit Letter

Petitioner's first claim is that the PCRA court erred in accepting his counsel's No-Merit Letter and dismissing the PCRA Petition. In order to review this claim, the relevant legal landscape must be reviewed. In this regard, the Federal Constitution imposes no obligation upon the States to provide appellate review of criminal convictions. McKane v. Durston, 153 U.S. 684, 687 (1894). When a State does grant appellate review, however, it must ensure that its procedures do not violate the constitutional guarantees of due process and equal protection. Griffin v. Illinois, 351 U.S. 12, 24 (1956) (holding that when a State conditions an appeal on the provision of a trial transcript, the State must furnish free transcripts to indigent defendants who seek to appeal). Accordingly, when a state does provide appellate review, the Fourteenth Amendment guarantees a criminal appellant the right to counsel in first appeals as of right. Douglas v. California, 372 U.S. 353 (1963). Moreover, a first appeal as of right is not adjudicated in accordance with due process of law if the appellant does not have the effective assistance of an attorney. Evitts v. Lucey, 469 U.S. 387, 396-397 (1985) (holding that a criminal

6

appellant pursuing a first appeal as of right is guaranteed the minimum safeguards necessary to make that appeal adequate and effective) (quoting Griffin, 351 U.S. at 20)).

The same is not true, however, with respect to the appointment of counsel on discretionary review. In this regard, the Supreme Court has determined that the Due Process Clause does not require a state to provide indigent defendants with counsel on discretionary appeals to a state Supreme Court. Ross v. Moffitt, 417 U.S. 600, 610-611 (1974) ("The fact that an appeal has been provided does not automatically mean that a State then acts unfairly by refusing to provide counsel to indigent defendants at every stage of the way."). The Supreme Court extended this rule to post-conviction relief in Pennsylvania v. Finley, 481 U.S. 551 (1987), where the Supreme Court clarified that, because the Due Process Clause does not obligate the States to provide defendants with post-conviction relief, there is no requirement that the State supply a lawyer as well. *Id.* at 557. In reviewing the Pennsylvania procedures for allowing counsel to withdraw in post-conviction proceedings, the Supreme Court found that an independent review of the record by competent counsel was all that a defendant was entitled to receive under state law. *Id* at 558-559.

The procedure for allowing withdrawal of court-appointed counsel in PCRA proceedings in Pennsylvania requires the following.

A "no-merit" letter by PCRA counsel detailing the nature and extent of his review;

PCRA counsel listing each issue the petitioner wished to have reviewed;

PCRA counsel's explanation of why the petitioner's issues are meritless;

The PCRA court conducting its own independent review of the record; and

concluding that the petition is meritless.

Commonwealth v. Pitts, 603 Pa. 1, 3, 981 A.2d 875, 876 (2009).

In the case at bar, PCRA appointed counsel, Steven Townsend, submitted a sixteen page

No-Merit Letter to the Court on June 13, 2011. That letter contained a lengthy analysis of

Petitioner's case, including an independent review for meritorious claims. That letter provides,

in pertinent part, as follows.

## C. There are No Meritorious Issues to Raise in an Amended PCRA

Despite the fact that Mr. Johnson did not list any claims aside from a generic ineffective assistance of counsel allegation, present counsel undertook an independent review of this case. In doing so, it became clear that there simply are not any meritorious issues to raise in an Amended PCRA Petition.

This case involved the very serious crime of criminal homicide. As outlined in the "Facts of the Case" section of this "no merit" letter, Mr. Johnson elected to give a taped statement to the homicide detectives investigating this case. He admitted having a verbal altercation with Mr. harris over a bottle of Nokolai vodka. Mr. Johnson told the detectives that he "hit" Mr. Harris with the sword because Mr. Harris picked up half a red brick and assumed a karate stance. Moreover, Mr. Johnson took the detectives to the location where he hid the sword after the stabbing.

Mr. Johnson exercised his right to proceed to a trial by jury, represented by Patrick Sweeney, Esquire, of the Public Defender's Office. During that trial, Mr. Johnson's taped statement was played for the jury. His self-defense claim was offered for the jury's consideration.

The Trial Judge instructed the jury on justification, as a result of the taped statement that Mr. Johnson gave to the homicide detectives. Specifically, the Trial Court instructed:

> THE COURT: The defendant has raised the issue of justification by the statement that he made to the police. And this was the question involving acting in self-defense. Self-defense is called justification in the law of Pennsylvania. If the defendant's actions were justified, you cannot find him guilty beyond a reasonable doubt. The issue having been raised, it is the Commonwealth's burden to prove beyond a reasonable doubt that the defendant did not act in justifiable self-defense.

After considering the testimony of the witnesses, considering the facts as established by the jury, and applying the law as instructed by the Trial Court, the jury concluded that Mr. Johnson was guilty of third degree murder.

In his letter to Petitioner, PCRA Counsel further explained his reasoning.

> I gave careful thought to the defense that was offered at trial, as well as the evidence offered at trial. Although I understand you believe you stabbed Mr. Harris in self-defense, the jury did not believe your actions were justified. The only real trial issue was whether or not you were justified in your actions, because you had admitted everything else. You took the homicide detectives to the place where you stashed the sword. You told them that you and Mr. Harris were engaged in a verbal disagreement. And you explained that you believed you needed to defend yourself when you saw Mr. Harris pick up half a red brick and assume a karate stance. Once again, the only thing left for the jury to consider was whether or not you were justified in taking your sword out of the sheath and stabbing Mr. Harris to death.
>
> I did not find any issues to present to the court regarding ineffective assistance of your prior counsel. I went beyond your suggestion and considered the case as a whole, and I did not find any other cognizable issues to raise in an Amended P.C.R.A.

ECF No. 11-5, p. 31.

After making its own independent review of entire trial record, the PCRA Court determined that the PCRA Petition was properly denied as Petitioner had failed to show that he was denied the effective assistance of counsel, both during trial and with respect to his PCRA proceeding.

Petitioner claims that the PCRA Court's determination denied him due process of law because he was entitled to effective assistance of counsel during his PCRA proceeding and PCRA counsel failed to assert any constitutional violations with respect to his trial counsel. To support his contention, he relies on the recent Supreme Court decision in Martinez v. Ryan, ___ U.S. ___, 132 S. Ct. 1309 (2012). In that case, an Arizona court sentenced Martinez to two consecutive terms of life imprisonment following his convictions on two counts of sexual conduct with a minor. The state appointed counsel to represent him on direct appeal. Arizona does not permit an appellant to raise claims of ineffective assistance of trial counsel on direct appeal. While the direct appeal was pending, Martinez's counsel began state collateral

9

proceedings by filing a "Notice of Post–Conviction Relief." Despite initiating the proceeding, counsel later filed a statement asserting she could find no colorable claim. The state trial court that heard the post-conviction matter gave Martinez 45 days in which to file a pro se petition and to raise any claims counsel overlooked. Martinez did not respond, and the trial court dismissed the action. The Arizona Court of Appeals affirmed, and the Arizona Supreme Court denied review.

One and a half years later, while represented by new counsel, Martinez filed a second notice of post-conviction relief in state court claiming ineffective assistance of trial counsel. The court dismissed the petition because Martinez could have raised the claim in a previous collateral proceeding. The Arizona Court of Appeals affirmed, and the Arizona Supreme Court denied review. Martinez then sought a writ of habeas corpus in the United States District Court for the District of Arizona, raising ineffective assistance of counsel claims. Martinez recognized that the state court denied relief based on a procedural rule, which, under the doctrine of procedural default, would prohibit a federal court from reaching the merits of his claim. However, he argued that he could overcome this barrier because his first post-conviction counsel was ineffective for failing to raise any claims in the first notice of post-conviction relief and in failing to notify Martinez of her actions. The District Court denied relief, and the Court of Appeals for the Ninth Circuit affirmed. The United States Supreme Court granted *certiorari*.

Although the Court was confronted with the issue of whether a prisoner has a constitutional right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of trial counsel's ineffectiveness, it specifically declined to resolve that issue because the precise question before the Court was whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a

10

procedural default in a federal habeas proceeding. *Id.* at 1315. Answering that question in the positive, the Court recognized a narrow exception to long standing Supreme Court precedent holding that attorney ignorance or inadvertence in a post-conviction proceeding does not qualify as cause to excuse a procedural default. *Id.* Specifically, the Court held that:

> when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

Martinez, 132 S.Ct. at 1318. In making its holding, the Court reasoned that "[w]here the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Id.* at 1317.

As Petitioner points out, Pennsylvania law prohibits defendants from raising ineffective assistance of trial counsel claims on direct appeal and, instead, requires that they are raised only in PCRA proceedings. Commonwealth v. Grant, 572 Pa. 48, 813 A.2d 726 (2002). Thus, he argues that he had a right to effective assistance of counsel during his PCRA proceedings, which was denied by his counsel's failure to have identified any meritorious claims of trial counsel's ineffectiveness. Assuming without holding that Petitioner did have a constitutional right to effective counsel during his PCRA proceeding, he has failed to show that PCRA counsel rendered ineffective assistance.

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and

11

2) counsel's unreasonable performance actually prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 684 (1984)). The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair and unreliable. Strickland, 466 U.S. at 689. A defendant is not entitled to relief unless he makes both showings. _Id._ at 687. Moreover, "[a] court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." _Id._ at 694. The Strickland standard applies equally to appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2002). Pennsylvania applies the same test for ineffective assistance of counsel as the Strickland test used in federal courts. Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).

With regard to the first criterion, counsel's effectiveness is measured objectively considering all the circumstances. Strickland, 466 U.S. at 687-88. In evaluating counsel's performance, the Court must "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy under the circumstances. _Id._at 689. "Strickland and its progeny make clear that counsel's strategic choices will not be second guessed by _post hoc_ determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 466 U.S. at 689). The relevant inquiry is not whether counsel was prudent, appropriate, or perfect; rather, the focus is simply to ensure that Petitioner received a fundamentally fair trial.

12

With respect to the second criterion, to establish prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Prejudice must be evaluated in light of the "totality of the evidence presented at trial" and a verdict only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Rolan, 445 F.3d at 982 (quoting United States v. Gray, 878 F.2d 702, 712 (1989)). Moreover, "counsel cannot be deemed ineffective for failing to raise a meritless claim." Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000).

In order to be entitled to relief in this Court, Petitioner must show that his PCRA counsel was ineffective for not raising an ineffective-assistance-of-trial-counsel claim. As an initial matter, the Court notes that Petitioner fails to show that PCRA counsel's conduct fell below an objective standard of reasonableness in filing a no-merit letter. More importantly, however, Petitioner fails to identify any specific claims of trial counsel's alleged ineffective assistance that his PCRA counsel should have brought to the Court's attention. Thus, he has failed to the make the necessary showing of prejudice in order to demonstrate that his PCRA counsel was ineffective. As such, he has failed to show that he is entitled to federal habeas corpus relief as to this claim.

## 2. Sufficiency of the Evidence

Petitioner's second claim is that the evidence was insufficient to support a guilty verdict of murder in the third degree. Where a petitioner challenges his incarceration on the ground that the evidence was insufficient to support his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

13

could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. *Accord* Moore v. Deputy Commissioner(s) of SCI-Huntington, 946 F.2d 236, 243 (3d Cir. 1991). A federal court must apply this standard " 'with explicit reference to the substantive elements of the criminal offense as defined by state law.' " Orban v. Vaughn, 123 F.3d 727, 731 (3d Cir. 1977) (quoting Jackson, 443 U.S. at 324 n. 16). *See also* Jackson v. Byrd, 105 F.3d 145, 149 (3d Cir. 1997). The jury, however, weighs the evidence and the federal courts must defer to the jury's resolution of conflicts in the evidence. Jackson, 443 U.S. at 326. Moreover, when a state appellate court thoroughly reviews the sufficiency of evidence, that court's determination is entitled to great weight. Parke v. Raley, 506 U.S. 20, 36 (1993). This deferential test places a very heavy burden on the appellant. United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995).

The test for insufficiency of evidence is the same under both Pennsylvania and federal law. Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992); Commonwealth v. Bricker, 525 Pa. 362, 581 A.2d 147 (1990) (an appellate court must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses charged).

Under Pennsylvania law, third-degree murder is defined "all other kinds of murder" other than first degree murder or second degree murder. 18 Pa. Cons. Stat. § 2502(c). To support a third degree murder conviction, the Commonwealth must prove a defendant committed the

14

killing with malice aforethought. Commonwealth v. MacArthur, 427 Pa. Super. 409, 629 A.2d 166, 167-68 (1993). Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Moreover, malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. Commonwealth v. Cottam, 420 Pa. Super. 311, 342, 616 A.2d 988, 1004 (1992). Significantly, the Commonwealth is not required to prove intent to harm as part of its proof that a defendant acted with malice. Commonwealth v. Miller, 426 Pa. Super. 410, 416, 627 A.2d 741, 744 (Pa. Super. 1993).

In the case at bar, the Superior Court made the following findings with respect to this claim in Petitioner's direct appeal.

> In order to sustain a conviction for third-degree murder, the Commonwealth must prove that a killing has been done with malice, which exists when there is a "wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." Commonwealth v. Santos, 876 A.2d 360, 363 (Pa. 2005) (citation omitted).

>> Indeed, our courts have consistently held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for "an unjustified and extremely high risk that his actions might cause death or serious bodily harm."

> Id. at 364. (citation omitted). "[T]he inference from the use of a deadly weapon upon a vital part of the body alone is sufficient to establish malice." Commonwealth v. Cruz-Centeno, 668 A.2d 536, 540 (Pa. Super. 1995).

>> Where an accused raises the defense of self-defense, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense. The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a

15

duty to retreat and the retreat was possible with complete safety. **It remains the province of the jury** to determine whether the accused's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat.

Commonwealth v. McClendon, 874 A.2d 1223, 1229 -1230 (Pa. Super. 2005) (citations and internal quotation omitted) (emphasis added).

Here, the evidence at trial established that Appellant killed the victim by stabbing him in the abdomen with a sword. As stated earlier, a jury can infer the requisite malice for a conviction of third degree murder by the use of a deadly weapon on a vital part of the body.

Appellant contends that he was merely defending himself during this "fast moving confrontation" because he "felt threatened by the victim who was violently drunk, picked up a brick and took an aggressive stance against him." However, the evidence presented at trial does not corroborate his argument.

The first eyewitness, Amanda Stedman, was sitting with Appellant when the victim approached her and asked her if she wanted a shot of alcohol. Ms. Stedman stated that after the victim left, Appellant stood up and followed him across the road just prior to the altercation. She also stated that she did not notice any bricks, stones or knives in the victim's hand during the fight. The second eyewitness, Martin Boehm, who assisted the victim after he was stabbed, also stated that he did not see any bricks, stones, or knives in the victim's hand or in the surrounding vicinity. In addition, police officers investigating the case never recovered a brick at the crime scene.

In light of this testimony, the jury concluded, with ample evidentiary support, that the defendant did not reasonably believe that he was in danger of death or serious bodily injury. In addition, the jury was well within its province to determine that the Appellant, who was armed with a sword, had a duty to retreat and that retreat was possible with complete safety. Thus, we affirm the trial court's holding that the evidence was sufficient to establish third degree murder and to discredit Appellant's claim of self defense.

ECF No. 11-2, pp. 39-42 (internal citations omitted).

Petitioner has not demonstrated that the Superior Court's determination with respect to his insufficient evidence claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas corpus relief from this federal court with respect to his second claim.

16

3.    Excessive Sentence

In his last claim, Petitioner complains about the length and severity of his sentence. Petitioner is not entitled to habeas corpus relief with respect to this claim as he has failed to allege the denial of any federal constitutional right. In this regard, a state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the Constitution or federal law. Smith v. Phillips, 455 U.S. 209 (1982); Geschwendt v. Ryan, 967 F.2d 877 (3d Cir.), *cert. denied*, 506 U.S. 977 (1992); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991).

Generally, sentencing is a matter of state criminal procedure and does not fall within the purview of federal habeas corpus. Wooten v. Bomar, 361 U.S. 888 (1959). *See also* Chapman v. United States, 500 U.S. 453, 465 (1991) ("[A] person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual...and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause."). As such, a federal court normally will not review a state sentencing determination that falls within the statutory limit, Williams v. Duckworth, 738 F.2d 828, 831 (7th Cir. 1984), as the severity of a sentence alone does not provide a basis for habeas relief. Smith v. Wainwright, 664 F.2d 1194 (11th Cir. 1981) (holding that a sentence imposed within the statutory limits can not be attacked in habeas proceeding). *Accord* Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42-43 (3d Cir. 1984) (a federal court has no power to review a state-imposed sentence in a habeas matter unless it involves a violation of a specific constitutional right). Thus, unless an issue of constitutional dimension is implicated in a sentencing argument, this Court is without power to grant habeas relief. United States v. Addonizio, 442 U.S. 178, 186 (1979) (noting that a criminal sentence

17

was not subject to collateral attack unless the sentencing court lacked jurisdiction to impose it or committed a constitutional error that made the sentence or underlying conviction fundamentally unfair). *Accord* Colon v. Folino, Civil No. 05-2519, 2008 WL 144212, at \*9 (M.D. Pa. Jan. 11, 2008).

Here, Petitioner couches his claim as violative of the Eighth Amendment. The Eighth Amendment forbids the imposition of "cruel and unusual punishments." A sentence violates the Eighth Amendment only when it is extreme and grossly disproportionate to the crime. Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) ( concluding that the Eighth Amendment contains only a narrow proportionality principle that does not require strict proportionality between crime and sentence but rather, forbids only extreme sentences that are grossly disproportionate to the crime.) (citations omitted). In determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must begin by comparing the gravity of the offense and the severity of the sentence. Harmelin, 501 U.S., at 1005. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. *Id.*

The Supreme Court recently reiterated this narrow proportionality review in Graham v. Florida, ___ U.S. ___, 130 S. Ct. 2011, 2022 (2010). There, Chief Justice Roberts explained as follows.

> Our Court has struggled with whether and how to apply the Cruel and Unusual Punishments Clause to sentences for noncapital crimes. Some of my colleagues have raised serious and thoughtful questions about whether, as an original matter, the Constitution was understood to require any degree of proportionality between noncapital offenses and their corresponding punishments. Neither party here asks us to reexamine our precedents requiring such

18

proportionality, however, and so I approach this case by trying to apply our past decisions to the facts at hand.

Graham's case arises at the intersection of two lines of Eighth Amendment precedent. The first consists of decisions holding that the Cruel and Unusual Punishments Clause embraces a "narrow proportionality principle" that we apply, on a case-by-case basis, when asked to review noncapital sentences. This "narrow proportionality principle" does not grant judges blanket authority to second-guess decisions made by legislatures or sentencing courts. On the contrary, a reviewing court will only rarely need to engage in extended analysis to determine that a sentence is not constitutionally disproportionate, and successful challenges to noncapital sentences will be all the more exceedingly rare.

We have not established a clear or consistent path for courts to follow in applying the highly deferential narrow proportionality analysis. We have, however, emphasized the primacy of the legislature in setting sentences, the variety of legitimate penological schemes, the state-by-state diversity protected by our federal system, and the requirement that review be guided by objective, rather than subjective, factors. Most importantly, however, we have explained that the Eighth Amendment does not require strict proportionality between crime and sentence; rather, it forbids only extreme sentences that are grossly disproportionate to the crime.

Our cases indicate that courts conducting narrow proportionality review should begin with a threshold inquiry that compares the gravity of the offense and the harshness of the penalty. This analysis can consider a particular offender's mental state and motive in committing the crime, the actual harm caused to his victim or to society by his conduct, and any prior criminal history.

Only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality, should courts proceed to an intra-jurisdictional comparison of the sentence at issue with those imposed on other criminals in the same jurisdiction, and an inter-jurisdictional comparison with sentences imposed for the same crime in other jurisdictions. If these subsequent comparisons confirm the inference of gross disproportionality, courts should invalidate the sentence as a violation of the Eighth Amendment.

Graham, 130 S.Ct. at 2036 -2038 (2010) (Justice Roberts concurring) (quotations and citations

omitted).

Employing this test, the Supreme Court upheld a sentence of life without parole for

possession of a large quantity of cocaine. Harmelin v. Michigan, 501 U.S. 957, 994-95 (1991).

19

The Supreme Court rejected a challenge to a sentence of twenty-five years to life for theft of a few golf clubs under a state recidivist statute's three-strikes sentencing scheme. Ewing v. California, 538 U.S. 11, 28-31 (2003). The Supreme Court upheld a similar sentence imposed on a defendant convicted on two counts of petty theft. Lockyer v. Andrade, 538 U.S. 63, 73-77 (2003). The Supreme Court also upheld a sentence of life imprisonment with eligibility for parole for a defendant convicted of his third felony theft offense involving the acquisition of a relatively small quantity of property, *i.e.*, fraudulent use of a credit card to secure $80 worth of goods, passing a forged check in the amount of $28.36, and obtaining $120.75 by false pretenses. Rummel v. Estelle, 445 U.S. 263, 285 (1980). The Supreme Court also upheld a forty-year sentence for possession with intent to distribute and actual distribution of marijuana. Hutto v. Davis, 454 U.S. 370, 373-75 (1982).

Thus, the threshold determination in the Eighth Amendment proportionality analysis is whether Petitioner's sentence was one of the rare cases in which a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. Petitioner's claim fails at this threshold level. I am guided in my analysis by the decision of the Pennsylvania Courts in their review of this claim. As noted by the Superior Court:

Appellant's claim of self-defense was not found to be credible, and he was sentenced to fifteen to thirty years' imprisonment for third degree murder. The maximum sentence he could have received for such an offense was twenty to forty years. 18 Pa.C.S.A. § 1102(d). Therefore, the sentence imposed fell within the standard range of the sentencing guidelines.

The trial court had the opportunity to observe Appellant, listen to his testimony, and view photographs of the murder weapon at the sentencing hearing. The court:

clearly considered Appellant's background and characteristics in imposing sentence. As reflected during the sentencing hearing, [the court] specifically noted that it had reviewed the presentence

20

report and that it considered the specific facts of the case. The court also explained that it did not believe that the maximum sentence of 20-40 years was appropriate. The court further considered that the defendant used the sword by taking it out of its sleeve and sticking it in a vital part of the victim's body, rather than using the sword as a cane to simply defend himself. The court also considered the defendant's prior criminal record in arriving at the sentence. The sentence was based on the court's consideration of the Appellant's history and background, the circumstances of the offense of conviction, the presentence investigation report and the Sentencing Guidelines.

Trial Ct. Op., at 12.

Based on the above, we do not find Appellant's sentence to be manifestly excessive.

ECF No. 11-2, pp. 45-46.

Petitioner has alleged no specific facts, much less furnished any evidence, showing his sentence is disproportionate to the sentences imposed throughout Pennsylvania, or to the sentences imposed in other jurisdictions, for similar offenses. Under such circumstances, Petitioner has failed to demonstrate that his sentence was grossly disproportionate to his offense. Thus, he has failed to establish that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. It follows that the Pennsylvania courts' rejection of this claim was not contrary to, or an objectively unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court. Accordingly, Petitioner is not entitled to habeas relief with respect to this claim.

## D. Certificate of Appealability

28 U.S.C. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right.

28 U.S.C. § 2253(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability will be denied. An appropriate order follows.

**AND NOW**, this /9 day of March, 2013:

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

By the Court:

Cynthia Reed Eddy
United States Magistrate Judge

Cleveland Orlando Johnson
GQ8759
SCI Albion
10745 Route 18
Albion, PA 16475-0002